IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL PERRICONE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:19-cv-00992-O |
| CITY OF MINERAL WELLS, TEXAS, | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Notice Regarding Settlement Negotiations (ECF No. 70), filed on October 5, 2023. Due to the breakdown of the parties' settlement efforts, Defendant requests that the Court reset this case by ruling on the dispositive motions that were pending and fully briefed prior to the parties' notice of settlement.[1] The Court **GRANTS** Defendant's request and now addresses one of the dispositive motions that were previously ripe for review.[2] Accordingly, once again before the Court are Defendant's Motion for Summary Judgment (ECF No. 32), Brief in Support (ECF No. 33), and Appendix (ECF No. 34), filed December 15, 2023; Plaintiff's Summary Judgment Response (ECF No. 37), filed January 12, 2023; and Defendant's Summary Judgment Reply (ECF No. 38), filed January 13, 2023. Having considered the briefing, facts, and applicable law, the Court finds that the Motion should be **GRANTED,** and all Plaintiff's claims should be **DISMISSED with prejudice**.

---

[1] Def.'s Notice Regarding Settlement Negotiations 1–2, ECF No. 70.
[2] Defendant submitted its Motion for Summary Judgment without waiving its Motion to Dismiss for Lack of Jurisdiction, Motion for Judgment on the Pleadings, and Brief (ECF No. 15), filed October 8, 2020. Def.'s Mot. for Summ. J. 1, ECF No. 32; *see also* Def.'s Mot. to Dismiss for Lack of Jurisdiction & Mot. for J. on the Pleadings., ECF No. 15. While that prior Motion to Dismiss is also ripe, the Court, in its discretion, chooses to resolve Defendant's Motion for Summary Judgment. The Court also notes that both motions, and the associated briefing submitted by both parties, are nearly identical.

I. **FACTS**

Plaintiff Christopher Perricone is the former mayor of the City of Mineral Wells, Texas, and he held the office of mayor when the causes of action at issue in this dispute accrued. The causes of action he brings against the City of Mineral Wells, Texas arise from a series of public and private interpersonal conflicts, as well as crossing allegations of misconduct. Plaintiff's claims can be generally grouped into his declaratory judgment claims, his free speech claim, and his due process claim.[3]

Importantly, the facts of this case appear entirely undisputed. In its Motion, Defendant recounts several pages of "Undisputed Facts."[4] And even though Plaintiff incorporates his response to Defendant's Motion to Dismiss (ECF No. 15) into his summary judgment response, neither pleading contains an alternate summary of facts.[5] Indeed, the entirety of Plaintiff's proffered summary judgment evidence consists of only a two-page affidavit sworn by Plaintiff himself.[6] Moreover, Defendant's own summary of the facts closely mirrors the facts alleged in Plaintiff's Original Petition.[7] Accordingly, the following recitation of the facts is drawn from the uncontested summary of facts in Defendant's Motion for Summary Judgment, unless otherwise specified.[8]

A. **Plaintiff's Declaratory Judgment Act Claims**

Plaintiff alleges that the parties dispute the meaning of a word in the City Charter which limits the mayor's and City councilmembers' interactions with City employees. The provision at issue states that "the council and its members shall deal with the administrative service solely

---

[3] Pl.'s Orig. Pet. ¶¶ 24–64, ECF No. 1-1.
[4] Def.'s Mot. for Summ. J. 3–7, ECF No. 32.
[5] *Compare* Pl.'s Resp. to Mot. to Dismiss, ECF No. 25 *with* Pl.'s Resp. to Mot for Summ. J., ECF No. 37.
[6] Decl. of Christopher Perricone 8–9, Ex. A., Pl.'s Resp. to Def's Mot. for Summ. J., ECF No. 37.
[7] *Compare* Def.'s Mot. for Summ. J. 3–7, ECF No. 32 *with* Pl.'s Orig. Pet. ¶¶ 7–23, ECF No. 1-1.
[8] Def.'s Mot. for Summ. J. 3–7, ECF No. 32.

through the city manager and neither the council nor any member thereof shall give orders to any subordinate of the city manager, either publicly or privately."[9] Plaintiff contends that the City, through its City Manager, has adopted an interpretation of the word "deal" in Section 28 which is overbroad and which hinders Plaintiff's ability to perform the duties of his office. For this reason, Plaintiff seeks a declaration that the term "deal" in Section 28 means "to transact business with" City employees.

Additionally, Plaintiff alleges that on July 30, 2019, the City Council passed a resolution which restricted the items that could be placed on a City Council meeting agenda by requiring the support of two councilmembers before an item could be placed on an agenda. Plaintiff contends that this resolution conflicts with Section 34 of the City Charter, which permits the mayor to request that a special meeting be called. Plaintiff claims that at some point he sought to call a special meeting of the City Council, but he was unable to do so because he did not have the support of any other councilmember to set the agenda for the meeting. Plaintiff seeks a declaration that he, in his official capacity as mayor, has the authority to call a special meeting of the City Council pursuant to Section 34 of the City Charter and that he may set the agenda for such a meeting without the support of another councilmember.

### B. Plaintiff's Free Speech Claim

Plaintiff alleges that he began investigating the interactions among City personnel and two business entities—the Industrial Foundation and Precision Ammunition—and that he had been speaking out against the City's decision to terminate a tax abatement agreement with Precision Ammunition. Plaintiff claims that, on July 17, 2018, the City Council voted to terminate a tax abatement agreement with Precision Ammunition and voted not to pursue an investigation

---

[9] Pl.'s Orig. Pet. ¶ 26, ECF No. 1-1 (quoting Section 28 of the City of Mineral Wells Charter).

concerning the Industrial Foundation and Precision Ammunition. As mayor, Plaintiff claims that he had been investigating what he believed to be improper and unlawful actions in connection with the Industrial Foundation, and he believes that the City's decision not to investigate the Industrial Foundation was intended to prevent Plaintiff from continuing his investigation and to silence his public criticism about actions by the City. Plaintiff asserts that the City Attorney indicated that if Plaintiff continued to investigate the matter in contradiction to the City's decision not to pursue an investigation, Plaintiff would be subject to removal from office. According to Plaintiff, the City "violated the Plaintiff's First Amendment right to free speech when, the Council took formal action to declare its intention not to pursue an investigation relating to the Industrial Foundation and Precision Ammunition and later, acting through the duly appointed City Attorney, threatening to remove the Plaintiff from his democratically elected office if the Plaintiff continued to investigate and speak out against the matter."[10]

Plaintiff asserts a claim under 42 U.S.C. § 1983. Specifically, Plaintiff asks the Court to hold that the City's vote concerning the Industrial Foundation and Precision Ammunition was a prior restraint which violated Plaintiff's constitutional rights and 42 U.S.C. § 1983.

### C. Plaintiff's Due Process Claim

On August 13, 2019, the City Clerk, Peggy Clifton, filed a complaint against Plaintiff, claiming that he had repeatedly violated Section 28 of the City Charter. Section 28 restricts the mayor's interactions with City employees. Although Clifton's complaint includes incidents which allegedly took place in June and August of 2019, Plaintiff acknowledges that the City hired Randy Criswell as its permanent City Manager in May of 2019—and some of the incidents detailed in the complaint refer to Criswell's involvement—Plaintiff nonetheless claims that the City's prior

---

[10] *Id.* ¶ 45.

4

interim City Manager, Margie Rose, determined that Clifton's complaint was without merit and declined to act on it. The City authorized an outside investigator, James Jeffrey, to investigate Clifton's complaint. On October 8, 2019, Jeffrey reported to the Council that, with respect to some of Clifton's charges, "the investigation disclosed sufficient evidence to clearly prove the allegation made in the complaint."[11] Plaintiff contends that Jeffrey reported to the Council his finding that three of the charges in Clifton's complaint were sufficient to warrant a hearing for removing Plaintiff from office pursuant to Section 28 of the City Charter. The Council chose not to pursue this remedy. Instead, the Council voted to forego a hearing and to censure Plaintiff.

Plaintiff claims that the City violated his due process rights in two ways. First, Plaintiff's due process rights were violated due to Criswell prosecuting Clifton's complaint a second time when it was allegedly dismissed by the previous City Manager. Second, Plaintiff alleges that the City violated his due process rights by censuring Plaintiff without holding a hearing and, as a result, besmirching his reputation. Plaintiff seeks a declaration that the City's censure is void for having been made in violation of his due process rights.

### D. Plaintiff Forfeited His Office

In February of 2020, Plaintiff forfeited his office as mayor of the City by operation of Section 22 of the City Charter, which immediately disqualifies any person from serving as mayor or councilmember if that person is in arrears in the payment of any taxes to the City. On February 14, 2020, pursuant to Section 24 of the City Charter, the City Council voted to elevate mayor pro-tempore, Tammy Underwood, to interim mayor until a new mayor could be seated in the May, 2020 election. Plaintiff was not among the candidates for mayor or for a position on the City Council in that year's election (which was postponed until November 3, 2020). Plaintiff is not

---

[11] *Id.* ¶¶ 21–22 (cleaned up).

currently serving as the mayor or in any other position on the City of Mineral Wells' City Council. However, Plaintiff did run an unsuccessful campaign to secure re-election as the City's mayor in 2022. He intends to run for the position again in a future election cycle.[12]

### E. Procedural History

On November 4, 2019, Plaintiff filed his Original Petition in the 415th Judicial District Court in Parker County, Texas, while he was still mayor of the City of Mineral Wells, Texas.[13] On November 25, 2019, the City removed the state court lawsuit to this Court.[14] This case was then indefinitely stayed pursuant to 11 U.S.C. § 362 due to Plaintiff's then-pending bankruptcy.[15] The Court re-opened this matter two years later on June 6, 2022 after Plaintiff's bankruptcy proceedings concluded.[16] Defendant filed its Motion for Summary Judgment on December 15, 2022.[17] Plaintiff filed his Response on January 12, 2023.[18] And Defendant filed its Reply on January 13, 2023.[19] Before the Court could rule on Defendant's Motion for Summary Judgment, the parties jointly notified the Court on April 17, 2023 that a settlement was reached.[20]

In the six months that followed, the parties failed to formalize the terms of their settlement. Eventually, each side separately filed a report confirming that attempts to finalize their settlement failed.[21] Despite prompting from the Court to file either a motion to enforce the oral settlement

---

[12] Decl. of Christopher Perricone 8–9, Ex. A., Pl.'s Resp. to Def's Mot. for Summ. J., ECF No. 37.
[13] Pl.'s Orig. Pet., ECF No. 1-1.
[14] Def.'s Not. of Removal, ECF No. 1.
[15] October 28, 2020 Order, ECF No. 18.
[16] June 6, 2022 Electronic Minute Entry, ECF No. 22.
[17] Def.'s Mot. for Summ. J., ECF No. 32.
[18] Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 37.
[19] Def.'s Reply in Support of Summ. J., ECF No. 38.
[20] Def.'s Second Suppl. Settlement Report, ECF No. 65; Pl.'s First Suppl. Settlement Report 2, ECF No. 67.
[21] The parties describe the failure in slightly difference ways. Defendant characterizes the failed settlement as "there was apparently no meeting of the minds between Plaintiff and Defendant as to the settlement of this case at the April 10, 2023, settlement conference. Def.'s Second Suppl. Settlement Report 3, ECF No. 65. According to Plaintiff, "the parties may have reached an oral settlement" but "when they later attempted to reduce the potential oral settlement agreement to writing, the parties were unable to agree on the actual

agreement or a joint notice that a settlement was not reached,[22] Defendant instead filed its own notice asking the Court to reset this case.[23] Defendant also asked the Court to rule on the dispositive motions still pending prior to the initial notice of settlement.[24] Accordingly, the Court turns to Defendant's Motion for Summary Judgment now, which was ripe prior to the parties' initial notice of a purported settlement.

## II. LEGAL STANDARDS

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that

---

terms of the potential oral settlement agreement." Pl.'s First Suppl. Settlement Report 2, ECF No. 67. Whatever the reason, no party has moved this Court to enforce the purported oral settlement.
[22] September 19, 2023 Electronic Minute Entry, ECF No. 69.
[23] Def.'s Notice Regarding Settlement Negotiations 1, ECF No. 70.
[24] *Id.* at 1–2.

"reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250. "[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (cleaned up). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.*

### III. ANALYSIS

As the Supreme Court held in *Celotex*, "[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. 477 U.S. at 322. Here, the entirety of Plaintiff's proffered summary judgment evidence consists of only a two-page affidavit sworn by Plaintiff himself.[25] As such, the Court considers whether that single document sufficiently establishes each element of Plaintiff's claims. Because the Court finds Plaintiff has failed to carry his burden, the Court **GRANTS** Defendant's Motion and enters summary judgment against Plaintiff.

#### A. Plaintiff's Declaratory Judgment Claims

In his Original Petition, Plaintiff asks the Court for a declaratory judgment as to two portions of the City of Mineral Wells Charter.[26] But before evaluating the merits of these claims, the Court must first consider whether Plaintiff has standing to seek the declaratory relief he

---

[25] Decl. of Christopher Perricone 8–9, Ex. A., Pl.'s Resp. to Def's Mot. for Summ. J., ECF No. 37.
[26] Pl.'s Orig. Pet. ¶¶ 24–36, ECF No. 1-1.

requests. Because the Court finds that Plaintiff lacks standing to sue for the specific declaratory relief he seeks, the Court must dismiss those claims.

Article III of the Constitution grants federal courts jurisdiction to adjudicate legal disputes only in the context of a case or controversy. U.S. CONST. art. III; *Camreta v. Greene*, 563 U.S. 692, 701 (2011). The party invoking a court's jurisdiction must establish that he has a personal stake in the dispute by showing "he has 'suffered an injury in fact' that is caused by 'the conduct complained of' and that 'will be redressed by a favorable decision.'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). Because declaratory relief cannot remedy a past wrong, a plaintiff seeking declaratory relief "can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Id*. The continuing or future injury must be an injury in fact. *Id*. "To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical." *Id*. at 720–21 (cleaned up). Importantly, "[t]o ensure a case remains 'fit for federal-court adjudication,' the parties must have the necessary stake not only at the outset of litigation, but throughout its course." *Camreta*, 563 U.S. at 701 (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997)).

As a preliminary matter, the parties dispute whether the federal Declaratory Judgment Act ("DJA") should govern Plaintiff's claims or whether they are governed by the Texas Uniform Declaratory Judgment Act ("Texas UDJA").[27] However, this distinction is irrelevant. Neither the

---

[27] Def.'s Br. in Supp. of Mot. for Summ. J. 6, ECF No. 33; Pl.'s Orig. Pet. ¶ 25.

DJA nor the Texas UDJA enlarge a court's subject matter jurisdiction by conferring Article III standing where none would otherwise exist. *See, e.g.*, *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) ("But generally, the [Texas UDJA] does not alter a trial court's jurisdiction."); *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997) ("[I]t is well settled that [the Declaratory Judgment Act] does not confer subject matter jurisdiction on a federal court where none otherwise exists."). Because Plaintiff lacks Article III standing to pursue any declaratory relief, the Court need not resolve which declaratory judgment statute most appropriately governs his claims.

Plaintiff may have had standing to sue for declaratory relief while serving as the mayor of the City of Mineral Wells, but he is no longer mayor. After forfeiting his office in 2020, Plaintiff mounted an unsuccessful campaign to reclaim his lost position in 2022.[28] Despite his defeat, Plaintiff intends "to run for the office of mayor of the City of Mineral Wells during a future election cycle, which are held every two years."[29] However, Plaintiff's "continuing intent to become mayor of the City of Mineral Wells" does not afford him Article III standing.[30] At present, Plaintiff is not actually being harmed. And he cannot state with any degree of certainty when he will be harmed, if ever. Perhaps Plaintiff may be re-elected mayor in 2024, or perhaps in 2026, or perhaps even later, or perhaps never. Simply put, this injury is entirely hypothetical. It is also neither concrete nor particularized since the Court cannot ascertain whether a future City Council—featuring a re-elected Mayor Perricone—would even actively dispute the same provisions of the City Charter at issue here. Given the conjectural and hypothetical nature of Plaintiff's declaratory judgment

---

[28] Decl. of Christopher Perricone 8, Ex. A., Pl.'s Resp. to Def's Mot. for Summ. J., ECF No. 37.
[29] *Id.*
[30] *Id.*

claims, the Court cannot find that some concrete, particularized future injury is imminent or actually exists at all.

As a final word on this point, Plaintiff also argues that he should have standing to sue for declaratory relief as a concerned private citizen.[31] According to Plaintiff, his declaratory judgment cation "will shape and inform" how "future mayors and councilmembers of the City of Mineral Wells can conduct themselves" and how "Perricone can effectively participate in the governance . . . as a private citizen."[32] While Plaintiff cites no legal support for this proposition, the Court interprets this argument as an attempt to invoke taxpayer standing. But this argument is unavailing. The Supreme Court has "consistently held that this type of [taxpayer standing] interest is too generalized and attenuated to support Article III standing." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007).

Even under Plaintiff's preferred declaratory judgment act, he does not appear to be "[a] person . . . whose rights, status, or other legal relations are affected by a . . . municipal ordinance." TEX. CIV. PRAC. & REM. CODE § 37.004(a). Applying the *ejusdem generis* and *noscitur a sociis* canons of construction, the Court interprets "[a] person . . . whose rights, status, or other legal relations" as belonging to the same general kind or class specifically mentioned alongside associated words in the same statutory provision—persons interested under a deed, will, or written contract. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 195–213 (2012) (discussing interpretative canons of construction). The Texas UDJA indicates that "[a] person interested" must actually be "affected" in a meaningful way such that their "rights, status, or other legal relations are affected. TEX. CIV. PRAC. & REM. CODE § 37.004(a). Although municipalities may be sued under § 37.004, the interested person seeking a declaration

---

[31] Pl.'s Resp. to Def.'s Mot. for Summ. J. 2–4, ECF No. 37.
[32] *Id.* at 3.

must have a personal stake due to how the municipal ordinance or statute affects his rights, status, or other legal relation. The record before the Court does not reveal that Perricone has such a right, status, or legal relation now that he is no longer mayor. And the fact that the Texas UDJA authorizes this limited class of suits against a municipality does not automatically confer standing on every individual citizen not actually impacted by the ordinance. *See* TEX. CIV. PRAC. & REM. CODE § 37.006(b) (authorizing lawsuits against municipalities since "any proceeding that involves the validity of a municipal ordinance" requires "the municipality must be made a party").

For these reasons, the Court concludes that Plaintiff lacks Article III standing to pursue his claims for declaratory relief.[33]

### B. Plaintiff's Free Speech Claim

Plaintiff also alleges a violation of his right to free speech.[34] Because the Court finds that Plaintiff failed to articulate a cognizable free speech claim against the City of Mineral by establishing each element of municipal liability, the Court must also dismiss this claim.

Municipal liability under 42 U.S.C. § 1983 requires (1) proof of a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)). At the summary judgment stage, the

---

[33] Defendant also argues that the Court lacks jurisdiction under the Texas UDJA due to governmental immunity. Def.'s Br. in Supp. of Mot. for Summ. J. 8–11, ECF No. 33. Plaintiff responds by arguing that the text of the Texas UDJA contains a waiver of such immunity. Pl.'s Resp. to Def.'s Mot. for Summ 3–6, ECF No. 37. Although the Texas UDJA appears to contain a *limited* waiver of immunity, Plaintiff must still establish standing. And after establishing standing, Plaintiff may only then sue a municipality under § 37.004 to invalidate the ordinance rather than obtain a declaration regarding his statutory rights or the meaning of the legislative enactment. *See City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 112 (Tex. App.—Dallas 2013, no. pet) (explaining that the Texas UDJA "waives governmental immunity against claims that a statute or ordinance is invalid" but "does not waive immunity against claims seeking a declaration of the claimant's statutory rights or an interpretation of an ordinance"). Moreover, the Texas UDJA cannot be used as an independent cause of action. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996) (citation omitted).
[34] Pl.'s Orig. Pet. ¶¶ 37–45, ECF No. 1-1.

plaintiff bears the burden of pointing to specific facts which would allow a jury to find each of these elements in his favor. *Celotex*, 477 U.S. at 322.

Plaintiff fails to carry his burden here. In fact, the entirety of Plaintiff's municipal liability argument is found in a single paragraph in his Original Petition:

> The Defendant violated the Plaintiff's First Amendment right to free speech when, the Council took formal action to declare its intention not to pursue an investigation relating to the Industrial Foundation and Precision Ammunition and later, acting through the duly appointed City Attorney, threatening to remove the Plaintiff from his democratically elected office if the Plaintiff continued to investigate and speak out against the matter.[35]

And this argument does not sufficiently improve at the summary judgment stage:

> The City, acting by and through its council, which is its ultimate authority and policymaker, infringed upon his constitutional rights by threatening to remove Perricone from his democratically elected office of mayor if Perricone did not cease to investigate and speak out regarding a matter of public interest. Such conduct is the exemplar of a violation of the constitutional right of free speech. Perricone seeks damages for the violation of his constitutional right, which is actionable under § 1983. Therefore, the Motion should be denied.[36]

Notably, these excerpts represent Plaintiff's entire argument on municipal liability. Plaintiff's argument on this issue in his response to Defendant's motion to dismiss is nearly identical in that it is similarly devoid of legal or factual citations.[37] Collectively, Plaintiff's nascent municipal liability arguments lack any legal citations. And the summary judgment record lacks facts that show Plaintiff successfully carried his burden of pointing to specific facts which would allow a reasonable juror to find each *Monell* element in his favor.

Plaintiff cannot survive summary judgment simply by restating the nature of his free speech claim with conclusory allegations identifying different official policymakers, switching from the

---

[35] *Id.* ¶ 45.
[36] Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 15, ECF No. 37.
[37] Pl.'s Resp. to Mot. to Dismiss ¶ 28, ECF No. 25.

City Attorney to the City Council.[38] That the City Attorney purportedly threatened to remove Plaintiff from office should Plaintiff continue to investigate and speak out on the investigation is not enough. The City Attorney is not a final policymaker, and his alleged actions cannot form the basis of any municipal liability for the City under § 1983. *See Piotrowski*, 237 F.3d at 578.

Even if the Court were to ignore this allegation regarding the City Attorney in Plaintiff's Original Petition—and instead find that his later filings pointing to the City Council satisfy this element of municipal liability—Plaintiff would still fall short. The Court cannot infer an argument on Plaintiff's behalf at the summary judgment stage regarding the remaining two elements. That burden belongs to Plaintiff alone. Plaintiff failed to demonstrate how the City Council's decision not to pursue an investigation of Industrial Foundation and Precision Ammunition somehow implicated his free speech rights, especially given that the City did *not* vote to remove him from office. The minutes describing the vote involve no prohibition of any kind on any conduct or action of Plaintiff—or of any other City Councilmember, for the matter.[39] Instead, the evidence shows that this vote was merely a decision by the City Council not to have the City conduct an official investigation—be it because of finite resources or some other reason not violating Plaintiff's free speech rights.[40] What is germane to this lawsuit is that there is no evidence (other than Plaintiff's own conclusory allegation) that his free speech was actually violated by an official policy or custom.

For these reasons, Plaintiff has not established as a matter of law that an official policy or custom put in place by an official policymaker served as the moving force for a violation of his

---

[38] *Compare* Pl.'s Orig. Pet. ¶ 45, ECF No. 1-1 (alleging "the duly appointed City Attorney" as the official policymaker) *with* Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 15, ECF No. 37 (identifying the "City . . . council" as the "ultimate authority and policymaker").
[39] *See* July 17, 2018 Minutes 3, Ex. A, Def.'s Not. of Removal, ECF No. 1-1.
[40] *See id.*

constitutional rights. Accordingly, the Court finds that Plaintiff has failed to carry his burden to overcome municipal liability at this stage to show that a reasonable juror might conclude he has a cognizable free speech claim against the City of Mineral Wells. Accordingly, Defendant is entitled to summary judgment on Plaintiff's free speech claim.

### C. Plaintiff's Due Process Claim

Plaintiff asserts a 42 U.S.C. § 1983 claim that the City of Mineral Wells violated his Fourteenth Amendment rights when its City Council publicly censured him without affording him due process. Yet as before, Plaintiff fails to adequately plead this claim. Therefore, the Court must grant summary judgment on it in favor of Defendant.

In analyzing a due process claim, courts engage in a two-part inquiry, determining first whether the plaintiff was deprived of a protected interest, and, if so, determining what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). When the protected interest at issue involves a reputational harm, courts employ the stigma-plus test first articulated *Paul v. Davis*. 424 U.S. 693 (1976). To satisfy this two-part stigma-plus test, plaintiffs alleging reputational harm must show that: (1) they suffered a stigma from governmental action plus (2) they experienced an alteration or extinguishment of "a right or status previously recognized by state law." *Paul*, 424 U.S. at 711. The Fifth Circuit "has consistently applied *Paul* by requiring that a section 1983 claimant show a stigma *plus* an infringement of some other interest." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991); *see also Kovac v. Wray*, 363 F. Supp. 3d 721, 753 (N.D. Tex. 2019) (summarizing stigma-plus jurisprudence). And turning to the second half of the broader due process inquiry, when the government deprives a person of a protected life, liberty, or property interest, the government must provide an "opportunity to be

15

heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted).

Plaintiff fails both prongs of the due process inquiry because he has not articulated a constitutionally cognizable injury. To begin, the evidence shows that the City provided notice and afforded Plaintiff a meaningful opportunity to be heard before he was censured.[41] Plaintiff participated in the meeting at which the City Council authorized Jeffrey to investigate the City Clerk's complaint, Plaintiff was interviewed by Jeffrey, and Plaintiff's counsel even provided Jeffrey with a written response to the complaint, which was included in the investigation report the Council received.[42] None of those facts are disputed by Plaintiff. Instead of specifically showing that a reasonable juror might find he was deprived of an opportunity to be heard, Plaintiff simply alleges a denial of process in a conclusory fashion. This is insufficient to raise a genuine issue of material fact. Moreover, since he forfeited his position as mayor, Plaintiff's only relevant surviving property interest is his reputation, which he alleges has been harmed by the City's public censure.[43] But even if Plaintiff is correct that this stigma besmirches his reputation, more is required under the stigma-plus test. Both Plaintiff's Original Petition and his summary judgment response reveal that Plaintiff's due process claim rests entirely on the purported damage to his reputation. This is insufficient. Therefore, having failed to establish a dispute of material fact on these due process issues, summary judgment must be granted in favor of Defendant once again.

## IV. CONCLUSION

For the foregoing reasons, the Court determines that Defendant's request to reset this case and address the dispositive motion previously ripe is **GRANTED**. To that end, the Court

---

[41] *See* August 27, 2019 Minutes 3, Ex. D, Def.'s Not. of Removal, ECF No. 1-1
[42] *See id.*; Report of Investigation 0026–40, 0059–62, Ex. F., Def's App'x to Mot. for Summ. J., ECF No. 34.
[43] Decl. of Christopher Perricone 8, Ex. A., Pl.'s Resp. to Def's Mot. for Summ. J., ECF No. 37.

determines that Defendant's Motion for Summary Judgment (ECF No. 32) should be, and is hereby, **GRANTED**. Plaintiff's claims are hereby **DISMISSED with prejudice** in their entirety. Final Judgment shall issue.

    **SO ORDERED** on this **8th day** of **November, 2023**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**